# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE: SUBPOENA TO AMAZON.COM, INC.AND AMAZON.COM SERVICES LLC<br><br>Underlying Case: *In re OpenAI Copyright Litigation*, Case No. 1:25-md-03143 (S.D.N.Y.) | Miscellaneous Case No. 2:26.1213<br><br>**CLASS PLAINTIFFS' MOTION TO COMPEL AMAZON.COM, INC. AND AMAZON.COM SERVICES LLC TO PRODUCE DOCUMENTS AND INFORMATION**<br><br>**NOTE ON MOTION CALENDAR: April 24, 2026** |

MOTION TO COMPEL

Class Plaintiffs in *In re OpenAI Copyright Litigation*, Case No. 1:25-md-03143 (S.D.N.Y.) ("*In re OpenAI"),* move to compel third-party Amazon.com, Inc. and its subsidiary Amazon.com Services LLC ("Amazon") to produce documents and data about AI-generated books in response to subpoenas served under Rule 45. This discovery is highly relevant, uniquely in Amazon's possession, and readily accessible through tools Amazon has already built.

**INTRODUCTION**

This case involves a class of book-author Plaintiffs in *In re OpenAI* ("Class Plaintiffs") who allege that OpenAI and Microsoft ("Defendants") infringed their copyrighted works, including by obtaining them from pirated databases such as the notorious "shadow library" Library Genesis and by reproducing some portion or all of their works in the outputs of their LLMs. *See* Ex. A (*In re OpenAI* MDL Complaint) at ¶¶ 96–121.

Class Plaintiffs' dispute with Amazon concerns document discovery related to the creation and sale of AI-generated books on the world's largest bookselling and self-publishing platform. These documents are highly relevant to Class Plaintiffs' alleged harms and thus to both damages and fair use.

The Subpoenas sought documents, data, or analyses concerning (a) the number and proportion of AI-generated books (measured in unit volume and dollar amount) published on Amazon's Kindle Direct Publishing platform ("KDP"), (b) the number and proportion of AI-generated books (measured in unit volume and dollar amount) sold through Amazon, and (c) trends in those numbers and proportions. The Subpoenas also sought documents concerning complaints or objections authors or other rightsholders have made to Amazon about AI-generated books that mimic or resemble their works.



## BACKGROUND

### I.    Procedural History and Class Plaintiffs' Claims

In late 2023, John Grisham, George R.R. Martin, David Baldacci, and other book authors ("Class Plaintiffs") filed a class action in the Southern District of New York against OpenAI entities and Microsoft ("Defendants") for direct and contributory copyright infringement. In 2025, this lawsuit was consolidated into a multi-district litigation ("MDL") with other pending copyright cases against OpenAI and Microsoft.

Class Plaintiffs allege that OpenAI and Microsoft infringed their copyrighted books by (1) downloading and reproducing Class Plaintiffs' works, (2) using those reproduced works to train Defendants' artificial intelligence ("AI") large language models ("LLMs"), and (3) creating infringing works through the outputs of Defendants' LLM products, including ChatGPT.

Among other harms, Class Plaintiffs contend that "Defendants' LLMs endanger authors' ability to make a living, in that the LLMs allow anyone to generate—automatically and freely (or very cheaply)—texts that they would otherwise pay writers to create. And by making it as easy as a press of a button to generate a book, the LLMs risk overwhelming the market for books and destroying the market for Plaintiffs' works—both those already published and those yet to come."

*See* Ex. A at ¶ 3. Put simply, "ChatGPT is being used to generate low-quality ebooks, impersonating authors, and displacing human-authored books." *Id*. at ¶ 150.

Class Plaintiffs' concern about the scale and potential harm of AI-generated books is not mere conjecture. Extensive public reporting has documented the "flood" of AI-generated books appearing for sale and the growing threat they pose to authors and publishers. This reporting has unsurprisingly focused on Amazon—the largest bookselling and self-publishing platform. Ex. B (CT Jones, "Amazon Is the World's Biggest Online Book Marketplace. It's Filled With AI Knockoffs," ROLLING STONE, Oct. 27, 2025) at 4 ("The current problem of AI knockoff books seems to have originated from" the "side hustle community" of self-publishers using Amazon Kindle Direct Publishing, who "mak[e] AI versions of new books that have just been released — ones that more people will be likely to search for.").

**II.      Subpoenas to Amazon**

In fall 2025, Class Plaintiffs issued document and deposition subpoenas to obtain information about Amazon's awareness and analysis of AI-generated books on its platform. The requests included:

- **Request No. 15:**  All Documents and Communications Concerning any analysis, study, or internal discussion regarding the impact of AI-generated works on the market for human-authored works, including on sales, licensing opportunities, or royalties.

- **Request No. 16:**  All Documents and Communications Concerning the creation, publication, offering for sale, or sale of AI-Generated Textual Works using Amazon's Publication Platforms or Amazon Sales Platforms, including:

  a.  The volume or projected volume of Sales and Profit associated with selling the AI-Generated Textual Works;
  b.  The volume and identity of existing works the AI-Generated Textual Works mimic, copy, parody, imitate, or resemble.
  c.  Complaints by authors, publishers, or other rights-holders Concerning such AI-Generated Textual Works.

- **Request No. 17:**  All Documents and Communications Concerning the creation, publication, offering for sale, or sale of AI-Generated Textual Works that mimic, copy, parody, imitate, or resemble—in whole or in part—the Class Infringed Works, including the Named Plaintiffs Infringed Works.

- **Request No. 19:**  All Documents and Communications Concerning Amazon's enforcement of its Process and Content Guidelines intended to track or prevent the creation, publication,

-4-
MOTION TO COMPEL

offering for sale, or sale of AI-Generated Textual Works that mimic, copy, parody, imitate, or resemble the title or the content of copyrighted textual works.

Ex. C (Amazon's October 17 Response to Plaintiffs' August 8 Subpoena) at Request 15; Ex. D (Amazon's December 3 Responses to Plaintiffs' November 11 Subpoena) at Requests 16, 17, 19.

## III.    Conferences Regarding the Subpoena

In its responses to those subpoenas ("Responses") and in conferences with Class Plaintiffs in December and January, Amazon's outside counsel did not materially dispute the relevance of this information. Instead, Amazon's counsel repeatedly told Class Plaintiffs' attorneys that the requests were improper and unduly burdensome because Amazon had not gathered data relevant to that determination and had no staff tasked with collecting or tracking data about the publication or sales of AI-generated books—and that no analyses of trends related to such books existed. Stein Decl. at ¶¶ 2–3; Reed Decl. at ¶¶ 2–3. For example, Amazon included these objections in its Responses to Plaintiffs' requests for documents concerning publication or sale of AI-generated textual works:

- This Request purports to require Amazon **to undertake an investigation into and gather** and produce **extensive data** on the "Sales and Profit" associated with the "selling the AI-Generated Textual Works" without a defined time period and without any identification of the specific works as to which the Request is inquiring.

- Amazon further objects to this Request on the grounds that **Amazon has no reasonable means of determining whether a work constitutes an "AI-Generated Textual Work,"** which information is outside its possession, custody, or control, and **attempting to investigate that would be extraordinarily expensive and burdensome**.

- Amazon further objects to this Request on the ground that **it purports to require Amazon to speculate as to the identity of "AI-Generated Textual Works"** and, worse still, the unidentified "existing works" they may "mimic, copy, parody, imitate, or resemble," which is outside of Amazon's possession, custody, or control and the proper subject for the parties' experts.

Ex. D at Responses to Request Nos. 16 and 17 (emphasis added).

During conferences about the scope of Amazon's document discovery, "Amazon's counsel (a) reiterated Amazon's written objections that it had no means of determining whether a work has been AI-generated and it had not gathered data relevant to that determination; (b) stated that Amazon could not locate any existing reports or analysis concerning the sale or publication of AI-generated works; and (c) stated that no team or certain staff within Amazon were tasked with tracking trends in

the data for publication or sale of AI-generated works." Stein Decl. at ¶ 2; Reed Decl. at ¶ 2. Amazon's counsel also did not disclose—in its Responses or in conferences with Plaintiffs—any email address or inbox for author or publisher complaints related to AI. Stein Decl. at ¶ 3; Reed Decl. at ¶ 3.

**IV.    Amazon's Document Production and Deposition**

After months of conferences, with fact discovery closing on February 27, 2026, Amazon represented that it "intend[ed]" to complete its document production by the end of February and would need to delay its 30(b)(6) deposition until the end of March to accommodate witness travel. Ex. E at 8–9. Class Plaintiffs agreed but expressly reserved the right to seek additional relief if needed after the deposition. *Id*. at 10.

On March 27, Amazon's 30(b)(6) witness, Courtney Sakre, was deposed in Charleston, South Carolina.



**V.    Post-Deposition Conference**

After the deposition, Class Plaintiffs asked Amazon to produce the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ refused. ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Amazon reiterated "that Amazon did not track this data in any meaningful way and prepared no formal reports, analyses, or studies concerning this data." Ex. E at 1. Class Plaintiffs therefore bring this motion.

**ARGUMENT**

Plaintiffs seek a discrete set of documents and information from Amazon: ▮▮▮▮▮▮▮

███████████████████

## I.      The Requested Documents Are Highly Relevant to Plaintiffs' Alleged Harms

The relevance of the information and documents Plaintiffs seek is beyond dispute. Indeed, in correspondence about Plaintiffs potentially filing this Motion, Amazon has not objected—because it cannot—that Plaintiffs' post-deposition requests seek irrelevant information or documents. Nor could it. Amazon is one of the world's largest publishers and the largest seller of books. Ex. K (H.R. Rep. No. 118–8, Investigation of Competition in Digital Markets, (2022)), at 213 (finding that "Amazon accounts for over half of all print book sales and over 80 percent of e-book sales"); Ex. L (Danny McLoughlin, "Amazon Publishing Statistics," WORDSRATED.COM (Jan. 12, 2023)) (reporting that Amazon is "one of the biggest book publishers in the world, on par with the Big Five."). The documents at issue relate directly to proving whether Defendants' LLMs harmed Plaintiffs by flooding the marketplace with copycat books or books that compete with those already on the market. This is relevant both to damages and factor four of the fair use analysis, which looks to "the effect of the use upon the potential market for or value of the copyrighted work." *See* 17 U.S.C. § 107(4); *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 179 (2d Cir. 2018) (finding that fourth factor favored copyright holder where defendants' use "usurped a market that properly belongs to the copyright-holder" and was worth "millions of dollars in the aggregate").

██████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████████████████████████
███

Amazon is also the most likely recipient of author or publisher complaints about knockoff works that contain the same expressive content as existing works—and thus negatively affect sales.

████████████████████████████████████
████████████████████████████████████

The Court should not take seriously any belated objection by Amazon based on purported irrelevance.

## II.	The Burden on Amazon to Produce These Documents Is Minimal

With no substantial dispute over relevance, Amazon must show that producing the requested data and documents would be unduly burdensome. Amazon's produced documents and Ms. Sakre's testimony show that producing this information imposes an extremely low burden.

-9-
MOTION TO COMPEL



Finally, on proportionality: Plaintiffs' lawsuit against OpenAI and Microsoft alleges one of the largest and most consequential copyright infringement claims on behalf of book authors on record. Amazon has vast resources and a preeminent place in the markets for publishing and selling books, which makes Amazon a unique source of information relevant to these claims. Plaintiffs' request that Amazon devote minimal additional resources to these limited third-party discovery requests is eminently proportional in a case of extreme importance to hundreds of thousands of authors and to the future of book writing and bookselling.

**III.　Class Plaintiffs' Motion Is Timely**

Fact discovery concluded on February 28, 2026. When Amazon insisted it could only make its corporate representative available for deposition after the cut-off, Class Plaintiffs agreed subject to reserving their rights to file a discovery motion in response to that deposition. Ex. E at 10 (Plaintiffs "reserve the right to seek additional relief from the Court following the deposition if we believe the representatives were insufficiently prepared to testify.").

Further, since the cut-off, the parties have raised and the court is still working to resolve

discovery issues. Defendants have, for example, sought to compel:

- five publishers to produce publication and distribution agreements associated with the Class Plaintiffs' works, *In re OpenAI*, ECF No. 1437 (S.D.N.Y.) (Defendants' Letter to the court filed Mar. 17, 2026 concerning production by four publishers); *id.* at ECF No. 1456 (sealed letter adding a fifth publisher filed Mar. 24, 2026); and

- Plaintiff *The New York Times* to produce subscriber data metrics and survey instruments, *id.* at ECF No. 1369 (sealed letter dated March 3, 2026).

Indeed, the next hearing to address discovery disputes is scheduled for May 12, 2026. *In re OpenAI*, ECF No. 1491. The MDL Court is also still making rulings requiring further discovery—as recently as April 7, 2026, Magistrate Judge Ona T. Wang ordered the second appearance of an OpenAI representative for a deposition due to insufficient preparation for 30(b)(6) questioning. *See In re OpenAI*, ECF No. 1492 at 1–2. This Motion could only have been filed after the discovery cut-off and is timely in light of ongoing discovery and the other relief still pending in the MDL Court.[1]

## CONCLUSION

For these reasons, the Court should compel Amazon to produce:

---

[1] Moreover, given its core relevance, this material is likely to play an important role in the parties' expert reports. Those reports will not be completed until June 26, 2026. *See In re OpenAI*, ECF No. 1452 (order modifying schedule for expert reports). There is thus plenty of time for the parties to make productive use of the material.

MOTION TO COMPEL

Dated April 9, 2026.                    Respectfully submitted,

                                By: */s/ Jordan Connors*
                                    Jordan Connors
                                    Susman Godfrey LLP
                                    401 Union Street, Suite 3000
                                    Seattle, WA 98101-2683
                                    Tel: (206) 516-3880
                                    Fax: (206) 516-3883

                                    *Attorneys for Class Plaintiffs*


## CERTIFICATION OF COMPLIANCE

I hereby certify that this Motion to Compel contains 3,658 words, in compliance with the Local Civil Rules. I further certify that Class Plaintiffs have met and conferred with opposing counsel regarding the discovery at issue in this motion on December 9, 2025, December 18, 2025, January 8, 2026, January 20, 2026, January 30, 2026, March 27, 2026, March 31, 2026, and April 1, 2026.

                                    */s/ Jordan Connors*
                                    Jordan Connors


## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I caused the document to which this certificate is attached to be served upon the party listed below via email:

    Angela L. Dunning
    adunning@cgsh.com
    Samuel Blankenship
    sblankenship@cgsh.com
    CLEARY GOTTLIEB STEEN & HAMILTON
    One Liberty Plaza
    New York, NY 10006

    *Attorneys for Amazon.com, Inc. and Amazon.com Services LLC*

                                    */s/ Jordan Connors*
                                    Jordan Connors